**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **MARGARET A. CARTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:07cv00682-WKW** |
| | ) | |
| **DIALYSIS CLINIC, INC.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff's one claim in this case is that Dialysis Clinic, Inc. ("DCI") discharged her because she took a leave of absence under the Family and Medical Leave Act ("FMLA").   In its Motion for Summary Judgment, DCI argued that (a) Plaintiff could not establish the requisite causal connection between her FMLA leave of absence and her discharge, and (b) she could not demonstrate that DCI's reason for her discharge was a pretext for retaliation.  There is no genuine dispute that DCI provided her with all of the FMLA leave and personal leave to which she was entitled by law and under DCI's policies.

In her Response in Opposition to Defendant's Motion for Summary Judgment ("Response"), Plaintiff did not address these arguments head-on.  Ignoring the applicable law and the undisputed facts that belie her claim, Plaintiff attempted to confuse the issues before the Court by arguing concepts embodied in the Americans with Disabilities Act ("ADA"), not the FMLA.  The crux of Plaintiff's argument is that, under "federal law", she "was entitled to a reasonable accommodation" in the form of a part-time schedule.  (Plaintiff's Response p. 14). However, unlike the ADA, the FMLA does not require an employer to reasonably accommodate an employee's serious health condition.  Williams v. Saad's Healthcare, 2000 U.S. Dist. LEXIS

4180 (S.D. Ala. 2000)(copy attached); Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3rd Cir.

2002); Hatchett v. Philander Smith College, 251 F.3d 670, 676 (8th Cir. 2001)(an employee who

could not otherwise perform the essential functions of her job, apart from the inability to work a

full-time schedule, is not entitled to intermittent or reduced schedule leave); Johnson v. Georgia

Tel. Co., 435 F. Supp. 2d 1237, 1241 n. 7 (N.D. Ga. 2006); 29 C.F.R. §825.702(a); 29 C.F.R.

§825.214(b).

The FMLA simply requires an employer to provide an employee twelve weeks of leave

and to reinstate the employee if she is able to return to work at or before the end of her leave of

absence. DCI complied with the FMLA in all respects. There is no genuine dispute that DCI

provided Plaintiff all of the FMLA to which she was entitled, but Plaintiff was not able to return

to work at or before the end of her FMLA leave. When Plaintiff was released to return to work –

four weeks after her FMLA expired, DCI had no legal duty to reinstate her.

Plaintiff asserted a claim for retaliatory discharge under the FMLA, but she cannot

present any evidence DCI discharged her because she exercised her rights under that statute.

Consequently, her claim should be dismissed.

**A.      Plaintiff has failed to establish that there is a causal connection between her FMLA leave of absence and her discharge.**

In her Response, Plaintiff presented no evidence of any causal connection between her

FMLA leave of absence and her discharge. She also ignored several facts that severely undercut

her claim, including (a) DCI's well-publicized FMLA policy, (b) the fact that DCI allowed

Plaintiff to return to work upon the expiration of each of her previous leaves of absence, and (c)

the fact that no manager or supervisor ever said or did anything that indicated that he or she was

upset about Plaintiff's use of FMLA leave. (Plaintiff p. 31, l. 11 – p. 32, l. 7, p. 97, l. 1-10). In

addition, Plaintiff did not dispute the fact that DCI facilitated the FMLA leave related to her

heart attack in May of 2005 and did not discharge her when her FMLA leave expired.  DCI granted Plaintiff a thirty-day, personal leave of absence upon the expiration of her FMLA leave.

Rather than address the preceding facts or present evidence of the necessary causal connection, Plaintiff suggested that DCI had an absolute duty to reinstate Plaintiff whenever her physician released her to return to work.  (Plaintiff's Response p. 9).  Plaintiff cited Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1004 (6th Cir. 2005) for the proposition that, "[o]nce an employee submits a statement from her health care provider which indicates that she may return to work, the employer's duty to reinstate her has been triggered under the FMLA."  (Plaintiff's Response p. 9).  Relying on the same decision, Plaintiff argued that the FMLA required DCI "to allow [her] to return to her old position with doctor's restrictions unless it can demonstrate that the 'doctor's work restriction render the employee [sic] unable to perform the essential functions of her job.'"  (Id. p. 12).

However, Plaintiff's reliance on this decision is misplaced, and her arguments lack any legal basis.  The plaintiff in Brumbalough was released to return to work prior to the expiration of her FMLA leave of absence.  In this case, there is no genuine dispute that, when her FMLA leave of absence ended on June 23, 2005, Plaintiff had not been released to return to work in any capacity.  (Complaint ¶13-14; Hamilton Aff. ¶3).  Plaintiff's physician did not release Plaintiff to return to work on limited duty until July 20, 2005, after her 12 weeks of FMLA leave had expired.  (Plaintiff Dep. p. 87, l. – p. 88, l. 5, Ex. 17).

Under the FMLA, Plaintiff's right to reinstatement expired at the end of her FMLA leave. See, Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 246 (6th Cir. 2004)(right to reinstatement does not arise unless the employee is able to perform the essential functions of the job or an equivalent at the end of the FMLA leave); Hatchett v. Philander Smith College, 251

F.3d 670, 677 (8th Cir. 2001)(an employee is not entitled to reinstatement if, at the end of the

FMLA leave period, the employee is still unable to perform the essential functions of the job); 29

C.F.R. §825.214(b).  Thus, DCI had no obligation to reinstate Plaintiff after June 23, 2005 (the

end of her FMLA leave), at which time she had not been released to return to work.

Plaintiff also argued that the FMLA required DCI to provide her a reasonable

accommodation by allowing her to work on a part-time schedule.  (Plaintiff's Response p. 14).

Defendant does not dispute the fact that an employer might have to modify or eliminate a non-

essential job function for an employee who is released to return to work <u>at or before the end</u> of a

leave of absence under the FMLA.  However, there is no genuine dispute in this case that

Plaintiff was not released to return to work at or before the end of her FMLA leave of absence on

June 23, 2005.  Plaintiff was released to return to work on or about July 20, 2005 – four weeks

after her FMLA leave expired.  Plaintiff's legally protected right to reinstatement under the

FMLA expired with the expiration of her 12 weeks of leave.  Consequently, the duty to consider,

under the FMLA, whether working the schedule of a full-time nurse was an essential function of

Plaintiff's job never arose.

Plaintiff's argument that DCI was required to reasonably accommodate her disability by

allowing her to work a part-time schedule on a temporary basis might have applied to a claim

under the ADA.  However, given the undisputed facts in this case (most importantly, Plaintiff's

inability to return to work at or before the end of her FMLA leave), that argument is irrelevant to

Plaintiff's FMLA-based retaliatory discharge cause of action.

In her Response, Plaintiff misrepresented the facts regarding a letter from her physician

concerning her release to return to work.  She claimed that Dr. Domingo sent DCI a letter on July

26, 2005, informing it that Plaintiff "could work a full shift two days a week."  (Plaintiff's

Response p. 11 and 12). In fact, there is no evidence that Dr. Domingo or his office ever sent DCI a copy of that letter. Plaintiff testified that she obtained the letter when she picked up copies of medical records from the physician's office. (Plaintiff Dep. p. 89, l. 20 – p. 90, l.4). She did not deliver the letter to DCI, and she did not know whether Dr. Domingo sent it to DCI. (Id. p. 90, l. 18 – 22). The letter was not addressed to DCI or any employee of DCI. (Id. Ex. 19). Plaintiff, furthermore, admitted that she never followed up with DCI about the possibility of working two, twelve-hour shifts. (Id. p. 92, l. 8-13). Thus, there is no evidence in the record that the letter was ever sent to DCI or that DCI ever received it.

Plaintiff also implied that DCI's decision to change "her shift requirements" while she was on her leave of absence indicated that DCI was upset about her use of FMLA leave. (Plaintiff's Response p. 15-16). There is no factual basis for such an implication. It is undisputed that DCI did not just change Plaintiff's work schedule; it changed the schedules for all of the nurses and patient care technicians. (Affidavit of Karen Hamilton ("Hamilton Aff.") ¶4; Plaintiff p. 61, l. 6-12, p. 76, l. 7-22).

Plaintiff also failed to identify any similarly situated, full-time nurse at DCI who was allowed to work a reduced hours schedule following the expiration of a personal leave of absence. (Plaintiff p. 96, l. 18-23). Although Plaintiff claimed that two employees (Bobby Streeter and Hazel Goshay) were allowed to work reduced hours (Plaintiff's Response p. 17), there is no dispute that neither one of those employees was a full-time nurse. (Plaintiff p. 96, l. 3-17). Thus, they are not legitimate comparators.

Based upon the preceding undisputed facts, DCI submits that Plaintiff cannot establish a genuine issue of material fact regarding a causal connection between her use of FMLA leave and her discharge.

**B.    Plaintiff cannot demonstrate that DCI's reason for her discharge was a pretext for unlawful retaliation.**

DCI discharged Plaintiff because, after using all FMLA leave and personal leave to which she was entitled, she was not able to return to her full-time work schedule, and she declined the potential opportunity to work two, twelve-hour shifts per week.  In her Response, Plaintiff failed to show that these reasons were a pretext for FMLA-retaliation.

There is no genuine dispute that, upon the expiration of her leaves of absence, Plaintiff could not return to the work schedule of a full-time nurse (i.e., 12-13 hour shifts three days per week).  In her Response, Plaintiff did not address this fact.  Instead, she simply repeated her incorrect argument that DCI had a duty to accommodate her by allowing her to work a part-time schedule.  DCI has discussed the fallacy of this argument above.

There also is no genuine dispute that Plaintiff never responded to Mr. Ashbury's suggestion regarding the possibility of working two, twelve-hour shifts.  (Plaintiff p. 67, l. 5-17, p. 90, l. 5 – p. 93, l. 1).  In her Response, Plaintiff did not refute this fact.  Instead, she erroneously claimed that "Dr. Domingo sent a third letter to Defendant, informing it that Carter could work a full shift two days a week."  (Plaintiff's Response p. 17-18).  However, as discussed above, there is no evidence in the record that Dr. Domingo or his office ever sent DCI a letter indicating that Plaintiff could work or wanted to work two, twelve-hour shifts.

Plaintiff testified that she obtained the letter when she picked up copies of medical records from the physician's office.  (Plaintiff Dep. p. 89, l. 20 – p. 90, l.4).  However, she admitted that she did not deliver the letter to DCI, and she did not know whether Dr. Domingo sent it to DCI.  (Id. p. 90, l. 18 – 22).  The letter was not addressed to DCI or any employee of DCI.  (Id. Ex. 19).  There is no proof, through documentation or sworn testimony, of transmission of the letter to DCI or receipt of the letter by DCI.  Most importantly, Plaintiff

admitted that she never followed up with DCI about the possibility of working two, twelve-hour shifts. (Id. p. 92, l. 8-13). She explained that she did not contact DCI about the possibility of working two twelve-hour shifts because "I didn't want to work 12-hour shifts." (Id. p. 90, l. 23 – p. 91, l. 7). Thus, there is no evidence in the record that the letter in question was ever sent to DCI or that DCI ever received it, and there is no genuine dispute that Plaintiff did, in fact, decline the potential opportunity to work two twelve-hour shifts per week.

Based on these undisputed facts, Plaintiff cannot show that DCI's reason for her discharge was a pretext for retaliation.

### C. Conclusion

Based upon the foregoing facts and applicable law, DCI submits that Plaintiff's claim of FMLA retaliation should be dismissed as a matter of law.

DATED this 17th day of July, 2008.

Respectfully submitted,

s/Davidson French
Davidson French (TN BPR#015442)
Tim K. Garrett (TN BPR #12083)
Bass, Berry & Sims, PLC
315 Deaderick Street, Suite 2700
Nashville, Tennessee 37238
(615) 742-6240
(615) 742-2740 Fax
Email: dfrench@bassberry.com

Henry C. Barnett, Jr. Esq. (AL BAR 037)
Capell & Howard P.C.
150 South Perry Street
Montgomery, Alabama 36104
(334) 241-8000
(334) 241-8214 Fax
Email: hcb@chlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th of July, 2008 a copy of the foregoing Reply Brief in Support Defendant's Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to

John D. Saxon
Russell P. Parker
Attorneys for Plaintiffs
2119 Third Avenue North
Birmingham, AL 35203

Parties may access this filing through the Court's electronic filing system.

s/Davidson French

6919554.1

2 of 3 DOCUMENTS

**CARLOTTA WILLIAMS, Plaintiff, v. SAAD'S HEALTHCARE, Defendant.**

**CASE NO. 99-1070-BH-S**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION**

*2000 U.S. Dist. LEXIS 4180; 8 Wage & Hour Cas. 2d (BNA) 1406*

**March 16, 2000, Decided**
**March 16, 2000, Filed**

**DISPOSITION:** [*1] Defendant's motion to dismiss (Doc. 9) DENIED IN PART AND GRANTED IN PART.

**COUNSEL:** For CARLOTTA WILLIAMS, plaintiff: Joseph E. Carr, IV, Esq., Legal Services Corporation of Alabama, Mobile, AL.

For SAAD'S HEALTHCARE, defendant: Paul D. Myrick, Esq., R. Scott Hetrick, Esq., Adams & Reese, LLP, Mobile, AL.

**JUDGES:** W B Hand, SENIOR DISTRICT JUDGE.

**OPINION BY:** W B Hand

**OPINION**

**FINDING OF FACTS; CONCLUSIONS OF LAW; AND ORDER**

This matter comes before the Court on Defendant's motion to dismiss (Doc. 9). Plaintiff's Complaint alleges three Causes of Action. The First Cause of Action alleges discrimination under Title VII. The Second alleges violations of Plaintiff's rights under the Pregnancy Discrimination Act. The Third and final Cause of Action alleges violations of Plaintiff's rights under the Family and Medical Leave Act. Defendant moves this Court to dismiss the Second Cause of Action as time barred. Defendant Further moves this Court to dismiss the Third Cause of Action for failure to state a claim upon which relief can be granted. Upon consideration of the motion and all pertinent portions of the record, the Court finds that Defendant's motion is due to be **DENIED IN PART AND GRANTED IN** [*2] **PART.**

**FINDINGS OF FACT**

For the purposes of this Order only, the Court adopts the facts as alleged in Plaintiff's Complaint at paragraphs 5-11.

**CONCLUSIONS OF LAW**

Plaintiff responded to Defendant's motion to dismiss the Second Cause of Action as time barred, by supplying evidence that the claim was not time barred. Defendant replied to Plaintiff's response by urging the Court to deny its motion as it related to the alleged violation of the Pregnancy Discrimination Act. Therefore, the Court finds that the Defendant's motion is due to be and is hereby **DENIED** insofar as it seeks to dismiss the Second Cause of Action.

On the other hand, the Court agrees with the Defendant that the Plaintiff has no cause of action under the Family and Medical Leave Act (FMLA), 29 U.S.C.A. § 2611-2654. The FMLA entitles eligible employees "to a total of 12 workweeks of leave during any 12-month period for one or more of the following: . . . (D) Because of a *serious health condition* that makes the employee unable to perform the functions of the position of such employee." (emphasis added) *29 U.S.C.A. § 2612.* According to Plaintiff's [*3] response to Defendant's motion, the Plaintiff did not suffer from any "serious health condition." If the Plaintiff did not have a serious health condition, then she is entitled to nothing under the FMLA, because she does not allege any other permissible theory of entitlement under the act. Therefore, Plaintiff's claim for relief under the FMLA is due to be **DISMISSED.** Although Plaintiff's claim under the FMLA is due to be dismissed solely based on the above, the Court will also address Plaintiff's proffered theory of recovery under the FMLA.

Plaintiff's theory is that her employer had a duty to somehow accommodate her by providing her with "light

Case 2:07-cv-00682-WKW-CSC    Document 25-2    Filed 07/17/2008    Page 2 of 2

Page 2

2000 U.S. Dist. LEXIS 4180, *; 8 Wage & Hour Cas. 2d (BNA) 1406

duty" work which was different than that which she originally performed. However, the Court agrees with the Defendant's interpretation of *Tardi v. Rehabilitation Hospital of Rhode Island*, which states that an employer has no such obligation. *168 F.3d 538, 544 (1st Cir. 1999).* As the court stated in that case, "it is not at all clear that the concept of 'reasonable accommodation' is applicable in the FMLA context. *Section 825.214(b)* eliminates the obligation to reinstate an employee returning from FMLA leave if that employee [*4] is 'unable to perform an essential function of the position.' *29 C.F.R. 825.214(b).* Unlike the ADA, this FMLA regulation omits the qualifying 'with or without reasonable accommodation' language. The regulation goes on to state that the employer may have obligations under the ADA, but this reminder does not import the 'reasonable accommodation' qualifier into the FMLA context." *Id.*

The employers obligation under the FMLA is to provide qualified employees, under certain circumstances, with 12 workweeks of leave. And when that leave time has expired, the employer must permit the employee to return to work at the same or similar position. 29 U.S.C.A. § 2611-2654. As stated by the Middle District of Alabama, "the FMLA simply 'requires that an employer provide an employee with unpaid leave up to twelve weeks.' Where 14 total weeks were provided, the

Defendant 'did not violate the FMLA.'" *Cox v. Autozone, Inc., 990 F. Supp. 1369, 1377 (M.D. Ala. 1998)* (citation omitted).

Just as in *Cox,* the Defendant in this case provided the employee with more than 12 weeks of leave, and was willing to give Plaintiff her original job after the leave was granted. [*5] Plaintiff in this case complains that she was not provided with a *different* job after her leave expired, but the Defendant had no obligation under the FMLA to accommodate her in this fashion. Because the Defendant fulfilled his obligations under the FMLA, the Plaintiff would have no cause of action against the Defendant under the FMLA, even if she *did* have a serious health condition which would avail her of the rights granted under the FMLA.

After a full and proper consideration of the record, and based on the above stated legal conclusions, the Plaintiff's claims under the Family and Medical Leave Act are due to be and are hereby **DISMISSED.**

**SO ORDERED** this 16th day of March, 2000.

W B Hand

SENIOR DISTRICT JUDGE