IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARGARET A. CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-682-WKW [WO] |
| | ) | |
| DIALYSIS CLINIC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Dialysis Clinic, Inc.'s Motion for Summary Judgment (Doc. # 19), which is accompanied by a brief (Doc. # 20) and two supporting affidavits (Doc. # 21 & 22). Plaintiff filed a response in opposition to summary judgment (Doc. # 23) with an evidentiary submission (Doc. # 24), to which Defendant replied (Docs. # 25 & 27). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that the motion is due to be granted.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 for all claims arising under federal law. The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

## II. FACTS AND PROCEDURAL HISTORY

Margaret Carter ("Carter") filed suit against Dialysis Clinic, Inc. ("Dialysis Clinic") on July 26, 2007, alleging one count of unlawful discrimination under the Family and

Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654, for wrongful termination in retaliation for her exercising her FMLA rights.  (Compl. ¶¶ 1, 31 (Doc. # 1).)  Dialysis Clinic, a not-for-profit corporation headquartered in Nashville, Tennessee, provides treatment for end-stage renal disease in chronic care and acute care settings.  (Watson Aff. ¶ 3 (Doc. # 21).)  At the time Dialysis Clinic terminated Carter, she was a dialysis nurse in its Union Springs, Alabama clinic, where she had worked since 2000.  (Watson Aff. ¶¶ 6-7.)  During her employment, she had taken four leaves of absence: in 2003, personal leave of absence for thirty days; in 2004, FMLA leave; in 2005, FMLA leave again; and tacked onto the second FMLA leave, thirty days of personal leave.  (Ashbury Letter dated July 26, 2005 (Ex. to Def.'s Summ. J. Br.); Carter Dep. 33:4-8, May 14, 2008 (Ex. to Def.'s Summ. J. Br.).)  Carter alleges that Dialysis Clinic terminated her job immediately after the second personal leave expired "based on her exercise of FMLA rights."  (Compl. ¶ 31.)

Carter's first FMLA leave was from October 29, 2004, to December 6, 2004.  (July 26 Ashbury Letter.)  Within the same twelve-month period, in May of 2005, Carter suffered a heart attack and used all of the remaining FMLA leave she had for that period; she was out on FMLA leave from May 9, 2005, until June 23, 2005, after which she was out on personal leave until July 23, 2005.  (Carter Dep. 46:14-17; July 26 Ashbury Letter.)  In a letter dated July 26, 2005, Lee Ashbury ("Ashbury"), Administrator of the Dialysis Clinic, notified Carter that effective July 25, 2005, her job had been terminated.  (July 26 Ashbury Letter.)  Ashbury communicated the following in the letter: "I know that you have discussed with Karen

2

Hamilton ["Hamilton"], R.N. Nurse Manager[,] the possibility of working two eight-hour shifts.  Eight-hour shifts don't work with the clinics [sic] scheduling.  However, we might be able to accommodate, on a temporary basis, two twelve hour shifts."  (July 26 Ashbury Letter.)

The letter refers to conversations Hamilton had with Carter during her leave about her return to work.  (Carter Dep. 59.)  According to Carter, when she discussed returning to work on a less than full schedule, Hamilton seemed amenable to accommodating her, but when Carter specifically said that she could only work eight-hour shifts on her return, "that's when everything turned around."  (Carter Dep. 59:5-60:7.)  Hamilton informed Carter that during her absence, the work schedules for all nurses and patient care technicians had been changed from ten hours a day, four days a week, to twelve to thirteen hours a day, three days a week, and suggested that Carter return two weeks later instead of working the first two weeks on eight-hour shifts.  (Carter Dep. 59:6-60:15, 64:5-17.)  According to instructions from her doctor, Dr. Domingo, however, Carter needed to work eight hours a day for the first two weeks to acclimate to working again; thus, regardless of when Carter returned, she needed two weeks at a lighter schedule.  (Carter Dep. 64:21-66:3.)  Upon learning that Carter needed an eight-hour shift schedule regardless of her return date, Hamilton told her that Dialysis Clinic could do nothing for her (Carter Dep. 65:23-66:6) but suggested that it possibly could accommodate a schedule of twelve hours a day, two days a week (Carter Dep. 90:6-10), an offer Ashbury repeated in his termination letter (July 26 Ashbury Letter).

3

After the conversation with Hamilton, Carter testified that she told Dr. Domingo she had to work twelve hours shifts to save her job and that his office was supposed to send the Dialysis Clinic a letter to that effect.  (Carter Dep. 90:10-22.)  That letter would supersede one Dr. Domingo sent dated July 21, 2005, clearing Carter to work eight-hour days for two weeks.  (*See* Dr. Domingo Letter dated July 21, 2005 (Evidentiary Submission Pl.'s Summ. J. Resp.).)  At first, Dialysis Clinic disputed it ever received a letter from Dr. Domingo clearing Carter to work twelve-hour days.  (*See, e.g.*, Def.'s Summ. J. Br. 6 ("Plaintiff never responded to Mr. Ashbury's suggestion regarding two, twelve-hour shifts.").)  In her response, however, Carter filed a letter dated July 26, 2005, written by Dr. Domingo, clearing Carter to work "a full shift for 2 days/one week," though the letter has no indication of having been sent or received.  (Dr. Domingo Letter dated July 26, 2005 (Evidentiary Submission Pl. Summ. J. Resp.).)  In its reply brief, Dialysis Clinic continued to argue that Dr. Domingo never sent a letter clearing Carter to work full day shifts.  (Def.'s Summ. J. Reply 6.)  After filing its reply, however, Dialysis Clinic notified the court that it had found a copy of Dr. Domingo's letter clearing Carter for full shifts, sent by fax on July 27, 2005, though the letter was not addressed to any Dialysis Clinic employee in particular. (Supplemental Reply 1-2 & Ex. A.)

Thus, now it is clear that Dialysis Clinic did receive a letter from Dr. Domingo clearing Carter to work a "full shift" two days a week.  Carter testified, however, that she never followed up on that offer or on whether Dr. Domingo ever sent the letter.  Carter said

that after her discussion with Dr. Domingo about writing a letter clearing her for full shifts, she "had come to the conclusion that [she] wasn't going to jeopardize [her] health," that the "doctor knew better." (Carter Dep. 92:13-19.) Carter was asked outright whether she ever "followed up with [Dialysis Clinic] about wanting to do two days a week 12 hours a day," to which she replied, "No." (Carter Dep. 92:10-13.) Carter never contacted Dialysis Clinic about the two days a week, twelve hours a day compromise even though she had asked Dr. Domingo to write the letter. (Carter Dep. 90:6-91:19.) Carter instead sued one year later.

## III. STANDARD OF REVIEW

This case is before the court on a summary judgment motion. "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(c), as amended December 1, 2007 (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[1] The party moving for summary

---

[1] Effective December 1, 2007, "[t]he language of Rule 56[was] amended . . . to make the rule[ ] more easily understood and to make style and terminology consistent throughout the rules. These changes . . . are stylistic only." Fed. R. Civ. P. 56 advisory committee notes. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and therefore, all cases citing the prior rule remain equally applicable to the current rule.

5

judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Celotex*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."

6

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (internal quotation marks omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.). If the evidence on which the nonmoving party relies, however, "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (Plaintiff's "conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own

7

conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment . . . ."). Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

Thus, in cases where the evidence before the court is admissible on its face or can be reduced to admissible form and indicates there is no genuine issue of material fact, and where the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact).

## IV. DISCUSSION

The FMLA gives eligible employees the right to take as much as twelve work weeks of unpaid leave during any twelve-month period for "'a serious health condition that makes

the employee unable to perform the functions of [her] position.'" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (brackets added) (quoting 29 U.S.C. § 2612(a)(1)(D)).  The FMLA creates a private right of action against employers that "'interfere with, restrain, or deny the exercise of or the attempt to exercise' FMLA rights." *Id.* (quoting 29 U.S.C. § 2615(a)(1)) (citing 29 U.S.C. § 2617(a)).  Section 2615(a)(1) breaks down into two types of claims  – for interference with FMLA substantive rights, and for retaliation when an employer discriminates against an employee who exercised FMLA rights. *Id.*  To prove an FMLA retaliation claim, "an employee must show that his employer *intentionally* discriminated against him for exercising an FMLA right." *Martin v. Brevard County Public Schs.*,     F.3d    , No. 07-11196, 2008 WL 4403009, at *5 (11th Cir. Sept. 30, 2008) (adding that an "impermissible retaliatory or discriminatory animus" must have been the motivation for the employer's actions).

If there is no direct evidence of intentional discrimination, the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.  *Martin*, 2008 WL 4403009, at *5.  The employee must first establish a prima facie case, which requires showing that "(1) [she] engaged in statutorily protected activity; (2) [she] experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action." *Hurlbert*, 439 F.3d at 1297; *Martin*, 2008 WL 4403009, at *5.  "[T]he burden then shifts to the [employer] to articulate a legitimate reason for the adverse action." *Hurlbert*, 439 F.3d at 1297; *Martin*, 2008 WL 4403009, at *5.  To

meet the burden of production, however, "'[t]he [employer] need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the [employee].'"  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (first alteration in original) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)).

If the employer satisfies its production burden, "'the presumption raised by the prima facie case is rebutted,' and 'drops from the case.'"  *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006) (quoting *Hairston v. Gainsville Sun. Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)).  The employee must then show that the employer's legitimate reason is pretextual.  *Martin*, 2008 WL 4403009, at *5.  To establish pretext, the employee needs to present evidence "'sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action.'"  *Id.* (quoting *Hurlbert*, 439 F.3d at 1298).  The way an employee can meet that burden is by showing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'"  *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996) (*en banc*)).

It is Dialysis Clinic's contention that Carter has not shown a genuine issue of material fact (1) with respect to her prima facie burden on the third element which requires proof of

a causal connection between the FMLA activity and adverse action, and (2) on pretext. (Def.'s Summ. J. Br. 6-7.)

### The Causal Connection Element of Carter's Prima Facie Case

Carter has failed to show a causal connection, Dialysis Clinic argues, because the evidence shows Dialysis Clinic treated Carter appropriately throughout her leaves of absence and that upon her FMLA leave's expiration, she could not fulfill the obligations of her job. Dialysis Clinic points to evidence that it informed Carter of her rights and granted her four leaves of absence, two of them under FMLA, and that it stayed in touch with her during each leave of absence.  (Def.'s Summ. J. Br. 7-8.)  Additionally, Dialysis Clinic notes that "[n]o manager or supervisor ever said or did anything that indicated that he or she was upset about [Carter's] use of FMLA leave."  (Def.'s Summ. J. Br. 9.)  In fact, Dialysis Clinic allowed Carter to take personal leave even when she was unable to return to work at the exhaustion of her FMLA leave.  (Def.'s Summ. J. Br. 8.)  When Carter was unable to return at the end of her personal leave on more than an eight-hour day, Dialysis Clinic extended a compromise to Carter to work twelve hours a day, two days a week, that she never accepted.  (Def.'s Summ. J. Br. 8-9.)  And Dialysis Clinic adds that Carter cannot identify any similarly-situated, full-time nurse at Dialysis Clinic allowed to work a reduced hours schedule after a leave of absence.  (Def.'s Summ. J. Br. 9.)

To establish a causal connection between the protected activity and adverse employment action, a plaintiff must show that they were "not wholly unrelated."  *Clover v.*

*Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (internal quotation marks omitted); *Ashe v. Aronov Homes, Inc.*, 354 F. Supp. 2d 1251, 1264 (M.D. Ala. 2004) (citing *Clover* in an FMLA case).  "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection,'" so long as there is no "'unrebutted evidence" that the decision maker lacked knowledge that the employee engaged in protected conduct.  *Hurlbert*, 439 F.3d at 1298 (quoting *Brungart v. BellSouth Telecomm.*, 231 F.3d 791, 799 (11th Cir. 2000)); *see also, e.g.*, *Giles v. Masterbrand Cabinets, Inc.*, No. 3:06-cv-528, 2007 WL 2274412, at \*3 (M.D. Ala. Aug. 3, 2007) (Watkins, J.).  The temporal proximity, however, should be "very close."  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (internal quotation marks omitted) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citation omitted)).  Three months' proximity between the protected activity and retaliation is too long to justify an inference of a causal connection.  *See Drago*, 453 F.3d at 1308.  This court has found that seven days between the end of taking FMLA leave and termination was sufficient to establish temporal proximity, *Giles*, 2007 WL 2274412, at \*1, 3, and clearly, if the termination occurs while the employee is on FLMA leave, there is a causal connection, *see Martin*, 2008 WL 4403009, at \*5.

12

One issue in this case, therefore, is whether one month and a few days – the time between the expiration of Carter's FMLA leave and the date of termination – is sufficient to establish the inference of a causal connection based upon temporal proximity.  Carter has no other evidence to otherwise sustain her burden on summary judgment to show a causal connection.  Carter testified that she never had any questions about her FMLA leave and confirmed that Dialysis Clinic, in establishing the leave and during it, helped her "in every way that [she] thought was appropriate with respect to [her] FMLA leave."  (Carter Dep. 83:6-15.)  Carter acknowledged that the two employees she claims were allowed to return with lighter duties after personal leaves of absence were not nurses but instead, were part of the "technical" staff.  (Carter Dep. 96: 10-17.)  She also stated that she never recalled a supervisor or manager making negative remarks about her, or anyone else's, FLMA leave. (Carter Dep. 97:1-10.)

Carter's response to Dialysis Clinic's prima facie challenge raises no arguments that directly address temporal proximity.  Instead, she argues that under the FMLA, Dialysis Clinic was required to reinstate Carter with doctor's restrictions unless they precluded her from performing the essential functions of her job, and that whether she could perform the essential functions of her job should be a question of fact for the factfinder.  (Pl.'s Summ. J. Resp. 12.)  There is, however, no right under the FMLA to reinstatement when the employee is unable to return to work at the expiration of her FMLA leave.  An employee who takes leave under § 2612 is entitled, on return from such leave, to her position or one "with

13

equivalent employment benefits, pay, and other terms and conditions of employment."  29

C.F.R. § 825.214(a);  29 U.S.C. § 2614(a)(1).  However, "[i]f the employee is unable to

perform an essential function of the position because of a physical or mental condition,

including the continuation of a serious health condition, the employee has no right to

restoration to another position under the FMLA."  29 C.F.R. § 825.214(b).  As the Sixth

Circuit has recognized, "an employer does not violate the FMLA when it fires an employee

who is indisputably unable to return to work *at the conclusion of the 12-week period of

statutory leave*."  *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (internal

quotation marks omitted) (emphasis added); *Bloom v. Metro Heart Group of St. Louis, Inc.*,

440 F.3d 1025, 1029 (8th Cir. 2006) ("[A]n employee is not entitled to restoration if, *at the

end of the FMLA leave period*, the employee is still unable to perform an essential function

of the job." (internal quotation marks omitted) (emphasis added)).[2]  Without other evidence

supporting a causal connection, Carter must rely solely on temporal proximity.

---

[2]  Furthermore, the FMLA does *not* require, as Carter suggests (*e.g.*, Pl.'s Summ. J. Resp. 14),
that an employee is entitled to a "reasonable accommodation" if she cannot perform the essential
functions of her position.  *Battle v. U.S. Parcel Serv., Inc.*, 438 F.3d 856 (8th Cir. 2006) ("[T]he FMLA
omits any requirement that employers seek to reasonably accommodate employees who cannot perform
the essential functions of their respective positions.  Any duty to accommodate the employee is governed
solely by the [Americans with Disabilities Act]." (citing 29 C.F.R. § 825.214(b); *Tardie v. Rehab. Hosp.
of R.I.*, 168 F.3d 538, 544 (1st Cir. 1999)); *see also Johnson v. Ga. Television Co.*, 435 F. Supp. 2d 1237,
1241 n.8 (N.D. Ga. 2006) ("Plaintiff cannot use the FMLA as a vehicle to seek damages for what is
essentially a claim for disability discrimination." (adding that legislative history states that the FMLA
provisions "are wholly distinct from the reasonable accommodation obligations of employers covered
under the [ADA]" (internal quotation marks omitted))); *Williams v. Saad's Healthcare*, No. 99-1070,
2000 WL 362038, at *1 (S.D. Ala. Mar. 16, 2000) ("[T]he Court agrees with the Defendant's
interpretation of *Tardi[e] v. Rehabilitation Hospital of Rhode Island*, which states that an employer has
no such obligation" under the FMLA to "somehow accommodate [a plaintiff] by providing her with
'light duty' work which was different than that which she originally performed.").

It is not necessary, however, for the court to determine whether one month and a few days sufficiently establishes temporal proximity for purposes of satisfying the prima facie burden on a causal connection. The court finds for reasons to follow that Carter has failed to amass sufficient evidence for satisfying her burden on pretext.

### Dialysis Clinic's Reason for Firing Carter and her Evidence on Pretext

Assuming *arguendo* that the court grants Carter her inference on a causal connection and finds she has established a prima facie case of retaliation under the FMLA, Dialysis Clinic then faces the production burden of offering a legitimate reason for terminating Carter. Dialysis Clinic's reason for terminating Carter is singular: She was unable to work a full-time work shift, or the less than full-time schedule that Dialysis Clinic offered. (Def.'s Resp. to Pl.'s Interrog. # 7 (Evidentiary Submission Ex. 3) ("[Dialysis Clinic] discharged [Carter] because . . . she was not able to return to her full-time work schedule, and she declined the potential opportunity to work two, twelve-hour shifts per week.").) Hamilton stated in her affidavit that when she was the nurse manager, Dialysis Clinic "adopted new work schedules for *all* nurses and patient care technicians at the Union Springs clinic," and that the shifts changed from ten hours a day, four days a week, to twelve to thirteen hours a day, three days a week. (Hamilton Aff. ¶¶ 2, 4 (Doc. # 22) (emphasis added).) When Carter told Hamilton before her personal leave expired that she would be unable to return on shifts more than eight hours a day, Hamilton was candid and clear about Dialysis Clinic's inability to accommodate Carter. *See supra* p. 3. Ashbury articulated this reason again, in his termination letter to

Carter:  "Eight-hour shifts don't work with the clinics [sic] scheduling."  (July 26 Ashbury Letter.)  Dialysis Clinic's reason for terminating Carter, therefore, clearly is "legitimate" and "raises a genuine issue of fact as to whether it discriminated against the plaintiff," *Combs*, 106 F.3d at 1528.     It is now Carter's burden to show "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Combs*, 106 F.3d at 1538.   Carter has fallen well short of meeting that burden.   Close temporal proximity of as little as two weeks is "probably insufficient to establish pretext by itself." *Hurlbert*, 439 F.3d at 1298; *see also Daugherty v. Mikart, Inc.*, 205 F. App'x 826, 827 (11th Cir. 2006) ("The passage of a short amount of time . . . may not be sufficient, by itself, to establish pretext.").  If two weeks probably is not enough, more than four weeks is even more so probably not enough, especially when the employer, as in this case, has a history of granting FMLA leave without penalizing its employees. *Daugherty*, 205 F. App'x at 828.  Carter testified to Dialysis Clinic's granting her FMLA the first time without penalty (Carter Dep. 41:3-16), and can point to no other instance of Dialysis Clinic's penalizing employees for taking FMLA leave (Carter Dep. 97:1-10).   Carter also has not presented evidence of "an employer's failure to articulate clearly and consistently the reason for an employee's discharge." *Hurlbert*, 439 F.3d at 1298.   Even though Dialysis Clinic's position on whether it received Dr. Domingo's letter permitting Carter to work "full shifts" changed, Dialysis Clinic voluntarily came clean when it belatedly found the letter, which had been sent

by fax and was addressed to no one in particular, *see supra* p. 4.

More important, Carter herself never took Dialysis Clinic up on its offer to work out a compromised work schedule. Had Carter offered to work twelve hours a day, two days a week, and had Dialysis Clinic declined her request, Carter might have had enough evidence for pretext, but on the facts of this case, Dialysis Clinic has remained consistent in its reason for terminating Carter, and Carter has not shown Dialysis Clinic "deviat[ed] from its own standard procedures," *Hurlbert*, 439 F.3d at 1299. Indeed, for the reason that the evidence is weak on a causal connection,[3] *see supra* pp. 12-14, no reasonable factfinder could find that Dialysis Clinic's reason for terminating Carter – that she could not come back to work shifts of appropriate length more than four weeks *after* her FMLA leave had expired  – is a pretext for terminating Carter for exercising her FMLA leave.

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's Motion for Summary Judgment (Doc. # 19) is GRANTED.

DONE this 22nd day of October, 2008.

       /s/   W.  Keith Watkins
UNITED STATES DISTRICT JUDGE

---

[3] In electing not to reach a conclusion on whether Carter established a causal connection, the court nevertheless makes clear that temporal proximity is the only evidence of causation.  *See supra* p. 14-15.